BENJAMIN F. WOOD, Appellant, *v.* ARTHUR G. HILL, Respondent. (Action No. 2.)

First Department, November 27, 1925.

Corporations — transfer of shares — action by shareholder to rescind transfer of corporate stock on ground of fraudulent representations inducing sale, to recover stock, and for accounting — complaint alleges series of false representations culminating in transfer apparently made to protect plaintiff's interests — corporation is family corporation, stock cannot be purchased on market and if sale stands plaintiff will be deprived of employment — plaintiff had right to sue in equity — allegation that defendant falsely represented that United States government would cause trouble on income tax does not deprive plaintiff of remedy — laches is matter of defense.

A complaint in an action in equity to rescind the sale of certain corporate stock made by the plaintiff to the defendant, to recover the stock, and for an accounting, is sufficient which alleges that the plaintiff was a holder of nearly one-half of the stock of a family corporation; that the stock could not be purchased on the market and that if the sale were permitted to stand he would be deprived of employment by the corporation with which he had been associated for more than thirty years; that the defendant was employed by

27

the corporation and by the plaintiff, personally, and knew all about the financial affairs of the corporation and attended to taxation matters, especially income taxes payable to the United States government; that after the other member of the corporation died the defendant falsely represented that the books were illegally kept and that the United States · government would investigate the corporation and cause the plaintiff trouble; that in order to settle an action brought against the plaintiff by the representative of the other stockholder, it was necessary for the plaintiff to give the defendant power of attorney; that in order to prevent the plaintiff in that action from tieing up the shares of stock in question here it was necessary for the plaintiff to transfer said shares to the defendant; and that the transfer was made in reliance upon such false and fraudulent representations.

The theory of the action may be regarded as one for rescission upon the ground of fraud and not upon the ground of duress.   The plaintiff had the right to go into equity to obtain a rescission of the contract, since the allegations of the complaint show that a part of the relief demanded is an accounting for all the income, dividends and profits received while the stock was in the possession of the defendant; that the stock possessed certain special and peculiar features due to the fact that the corporation was a family corporation; that the stock could·not be purchased on the market, and that the sale of the stock if permitted to stand would deprive the plaintiff of the opportunity of employment in the company with which he had been associated for more than thirty years, and which had been founded by his grandfather and bore the family name.

The allegation in the complaint that the defendant falsely and fraudulently represented to the plaintiff that the United States government was about to investigate income tax matters and that it was necessary for the plaintiff to employ the defendant to protect his interests, and that he did so employ the defendant, does not deprive the plaintiff of his remedy, for there is no allegation, even assuming that defendant's statements that the books had been illegally kept were true, that the defendant was employed to do anything illegal. Furthermore, said allegation is immaterial, for the employment of the defendant in that respect has no relevancy in the case at bar, since the plaintiff does not in any sense require the aid of such agreement of employment to make out his case nor will the granting of equitable relief involve an affirmation by the court of the conduct of the plaintiff in that respect.        -

The question of laches is a matter of defense and the mere fact that the contract which the plaintiff sues to rescind was made in April, 1923, and the complaint was verified in June, 1924, does not in and of itself show such inexcusable laches as to render the complaint bad on a motion to dismiss.

Appeal by the plaintiff, Benjamin F. Wood, from an order of the Supreme Court, made after answer at the Bronx Special Term and entered in the office of the clerk of the county of Bronx on the 3d day of January, 1925, granting defendant's motion to dismiss the amended complaint, and also from the judgment entered in said clerk's office on the 27th day of January, 1925, pursuant to said order.

*William F. S. Hart* [*William A. Onderdonk* of counsel], for the appellant.

*I. Gainsburg* [*Joseph P. Segal* of counsel; *J. W. Friedman* with him on the brief], for the respondent.

FINCH, J.:

Whether the amended complaint states facts sufficient to constitute a cause of action is the question here presented for decision.

The amended complaint alleges that the plaintiff was induced by certain false and fraudulent representations made by the defendant to sell to the defendant 450 shares of stock which the plaintiff held in a family corporation, in return for three unsecured and non-interest-bearing promissory notes, one for eight months and the other two for a year and eight months, each in the sum of $5,000. Plaintiff sues for the rescission of the sale and for the recovery of the stock, and tenders back the promissory notes received.

The learned court at Special Term, in holding that the complaint was insufficient, evidently relied upon a line of authorities holding upon the respective facts presented, that the plaintiff could, by electing to rescind and suing upon such rescission, recover the damages he had suffered, and determined that no such need was here shown as would entitle the plaintiff to invoke the aid of a court of equity.

The following is the substance of the complaint: That the plaintiff was the owner of 450 shares out of 1,000 shares of the common stock of B. F. Wood, Inc., a New York corporation, of which the defendant was secretary and treasurer; that for a period of two years before the representations relied on herein for a rescission were made, the defendant had been employed as an accountant by a firm known as Wood & McClure, of which the plaintiff was a partner, and also by the corporation B. F. Wood, Inc., which succeeded the said partnership; that the defendant had complete charge of all the books and records of both the partnership and the corporation which succeeded it, and of all income tax matters and the preparation and filing of income tax returns of the partnership and corporation and also of the plaintiff personally and of his family; that the partner of the plaintiff died, and the defendant balanced the old books of the partnership and opened and kept a new set of books for the plaintiff as liquidating partner of the partnership; that by reason of the foregoing the defendant became possessed of private and confidential information concerning the plaintiff, including his affairs and the affairs of others with whom he did business; that the plaintiff had no familiarity with the books of account or income tax laws or requirements, but relied wholly on the defendant to protect his interests; that an action was pending in the State of Connecticut in which a beneficiary of plaintiff's deceased partner was plaintiff and the plaintiff herein was defendant; that the defend-

ant in the case at bar requested, and recommended to the plaintiff herein, that he retain an attorney in Connecticut to act for him in the Connecticut litigation; that said defendant chose for this purpose an attorney who was related by marriage to him; that said defendant made to the plaintiff false, fraudulent and criminal representations that the United States government was about to investigate the business theretofore conducted by the aforesaid partnership of Wood & McClure, and that the books of account of said partnership had been improperly and dishonestly kept, whereby the United States government had been defrauded of taxes rightfully due, all of which would be shown by the investiga-- tion; that if such investigation were made, the plaintiff would be liable to severe punishment and imprisonment; that defendant could bring about a settlement of the Connecticut action if the plaintiff would employ the defendant to effect the same, and the plaintiff would then be saved from all the threatened difficulties with the government; that by means of the aforesaid represen- tations the defendant induced the plaintiff to employ him to settle the Connecticut action; that the defendant criminally and fraudu- lently obtained the employment to settle the Connecticut action not only to secure the money to be paid to him for his expenses and disbursements and also a further sum to be paid in the event that he was successful in effecting a settlement, but also in further- ance of a purpose to obtain from the plaintiff his 450 shares of common stock in the corporation; that thereafter the defendant obtained from the plaintiff a power of attorney granting to the defendant the absolute right to do whatever was requisite or necessary to compromise, settle or discontinue the Connecticut action, upon the threat that if the power of attorney were not executed, the defendant would refuse to continue trying to effect a settlement, and in consequence the alleged impending investiga- tion by the United States government would find the plaintiff helpless and without defense; that the said power of attorney was obtained in furtherance of the purpose of the defendant to extort from the plaintiff the said 450 shares of common stock of the corporation; that the defendant then, pursuant to the agree- ment before mentioned and the power of attorney, for the purpose of extorting the property from the plaintiff and securing a dominant interest in the corporation, falsely, wrongfully and criminally represented to the plaintiff that the beneficiary of the deceased partner of the plaintiff was about to " tie up " the said 450 shares of stock of the corporation owned by the plaintiff, and that thereby the business of the corporation would be jeopardized, if not ruined; that by means of these threats the plaintiff was induced, through

the fear wrongfully and criminally created in the mind of the plaintiff, together with all the other threats alleged, to consent to an agreement whereby the said shares were transferred, indorsed over and delivered to defendant in exchange for the notes aforesaid; that the differences between the plaintiff and the beneficiary of the deceased partner were settled on the basis of a liquidation statement whereby the plaintiff paid to said beneficiary a certain sum; that the 450 shares of stock were worth over $45,000, but that their exact value was unknown, because they could not be purchased in the open market; that through the extortion of the stock by the threats above set forth, the plaintiff was deprived not only of the value of the stock, but of the opportunity of employment in the business with which he had been associated for more than thirty years, which business originally was created by his grandfather and carried on by his father; that for his loss and damage he has no adequate remedy at law.  Plaintiff offers to restore to the defendant the three notes received by him upon the transfer of the stock, and consents that the judgment so provide as a condition of the rescission of the said agreement.  Judgment is demanded that the agreement be rescinded and set aside, and that the defendant restore to the plaintiff his stock upon receiving back the notes, and that the defendant be required to pay to the plaintiff all the income, dividends and profits received by him on the stock while it has been in his possession.

The defendant contends that this is an action to recover on the ground of duress.  From the complaint, however, it can also be taken as an action to recover on account of false representations. Because the plaintiff has alleged the resultant fear which seized him, is no reason why effect should not be given to the fact that he alleges that the fear and inducement were brought on by false, fraudulent and criminal representations.  In other words, the theory of the action may be regarded as one for rescission upon the ground of fraud, and not exclusively upon the ground of duress. When a plaintiff has been induced to enter into a contract by false and fraudulent representations, it is settled that he may elect to rescind and sue for the consideration in an action at law, or he may affirm the contract and bring an action at law to recover the damages suffered by him as a result of the fraud, or he may sue for rescission in equity if otherwise he cannot obtain complete redress at law.  In *Clark* v. *Kirby* (204 App. Div. 447, 451) Mr. Justice MERRELL said: " The law is elementary that where one has suffered by reason of the misrepresentation of another, and has been led to part with his money in reliance upon said false and fraudulent misrepresentation, he has three independent reme-

dies: *First,* he may affirm the contract into which he had been induced to enter and sue for his damages for the fraud perpetrated upon him.   *Second,* he may rescind the contract itself and bring action to recover back the moneys which he has paid.   *Third,* he may bring an action in the nature of the action at bar in a court of equity to obtain a rescission of the contract into which he had been induced to enter, with incidental relief."

If the plaintiff is successful, the fact that a portion of his relief would be to require the defendant to account for all the income, dividends and profits received while this stock has been in his possession, in accordance with the prayer for relief, would be sufficient to give to the plaintiff the right to apply for relief on the equity side of the court; and then, in accordance with the familiar principle, the court, having thus acquired jurisdiction of the cause, can grant to the plaintiff complete relief.   This, in itself, is sufficient to require a reversal of the judgment and order appealed from.   As was said by HOUGHTON, J., in *Smith* v. *First National Bank* (151 App. Div. 317, 321): " When a court of equity has obtained jurisdiction of the parties and of the subject matter of an action, it will retain it and adapt its relief to the exigencies of the case even though it is impracticable to grant the specific equitable relief demanded.   (*Valentine* v. *Richardt,* 126 N. Y. 272; *Mott* v. *Oppenheimer,* 135 id. 312; *Consolidated Fruit Jar Co.* v. *Wisner,* 110 App. Div. 99.)   Not only will equity thus retain jurisdiction for the purpose of doing justice between the parties, but also for the purpose of avoiding a multiplicity of suits.   (*Satterlee* v. *Kobbe,* 173 N. Y. 91, 97.) "

In addition, as noted, the plaintiff alleges that the shares of stock cannot be purchased in the open market.   This allegation, coupled with the allegation that the sale of the stock had deprived the plaintiff of the opportunity of employment in a company with which he had been associated for more than thirty years and which had been founded by his grandfather and bore the family name, would seem to give to the plaintiff a remedy in equity, upon the ground, not only that the true value of the property could not be ascertained, but that there were peculiar and exclusive features connected with the property which could not be compensated for in damages.

The defendant further urges that even though the aforesaid facts might otherwise entitle the plaintiff to come into equity, nevertheless because the plaintiff alleges that he employed the defendant to prevent the United States government from taking advantage of the alleged fraud practiced upon it, the plaintiff is not entitled to equitable relief.   In this connection, however, it is

to be noted that it is alleged that the representations made by the defendant were false, and hence there was in fact no defrauding of the government, and the plaintiff, therefore, could not be guilty of an offense against the government.

In addition there was nothing criminal in the desire of the plaintiff to be at peace with the other party in the liquidation of the partnership, nor was the plaintiff acting criminally in retaining the defendant to assist him, even assuming as true what the defendant represented concerning the plaintiff's books and statements. It does not appear that the defendant could do anything or was expected to do anything that would thwart or influence any investigation by the government. His employment was consistent with legitimately assisting the plaintiff since it is alleged that the plaintiff was entirely unfamiliar with the books, etc. It moreover appears that the aforesaid representations led up to the situation where the plaintiff in the Connecticut action was alleged by this defendant to have threatened to " tie up " the business and thereby destroy the value of plaintiff's stock. This latter representation is alleged as the representation which finally induced the plaintiff to consent to the transfer.

But whether or not the plaintiff is subject to criticism or censure in connection with the employment of the defendant has no relevancy in the case at bar, since the plaintiff does not in any sense require the aid of such agreement of employment to make out his case herein, nor does the affording of equitable relief to the plaintiff herein involve an affirmation by this court of the conduct of the plaintiff in the matter. As was said in *Primeau* v. *Granfield* (193 Fed. 911, 916): " The wrongdoing which will defeat a litigant must have connection with the matter in litigation. Misconduct in outside matters will not have such effect. A new contract upon a new consideration is not necessarily unlawful because it relates to property acquired through unlawful transactions. The real test in such a case as this is whether the plaintiff requires any aid from the fraudulent transactions to establish his demand. If he does, he cannot recover. If he does not, and the cause of action is unconnected with the fraudulent undertaking and is founded upon a collateral consideration, he may recover."

In so far as the defendant further urges that the plaintiff is precluded by laches, this is a matter of defense. The mere fact that the contract which the plaintiff sues to rescind was made on or about April 16, 1923, whereas the complaint shows that it was not verified until June 28, 1924, does not in and of itself show such inexcusable laches as to render the complaint bad as against a motion to dismiss.

It follows that the facts alleged in the complaint are sufficient to state a cause of action in equity, and that, therefore, the judgment and order appealed from should be reversed, with costs, and the motion denied, with ten dollars costs.

CLARKE, P. J., MERRELL, MARTIN and BURR, JJ., concur.

Judgment and order reversed, with costs, and the motion denied, with ten dollars costs.